**United States District Court**
**District of Connecticut**

| | | |
|---|---|---|
| **United States of America** | : | Crim. No. 3:17-CR-232-VLB |
|     Plaintiff | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Alba Filomeno-Gomez** | : | |
|     Defendant | : | October 24, 2018 |

## MEMORANDUM IN AID OF SENTENCING

The Defendant, Alba Filomeno-Gomez, respectfully submits this reply memorandum in aid of sentencing.

On October 25, 2017, Ms. Filomeno-Gomez was arrested for the present offense. On July 17, 2018, she entered a guilty plea to one count of Conspiracy to Possess 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 846, pursuant to a plea agreement with the Government. The Government and Ms. Filomeno-Gomez agree that she is within Criminal History Category I. This corresponds to an offense level of 30-37 months imprisonment.

For the following reasons, Ms. Filomeno-Gomez respectfully submits that a sentence of one year and one day, followed by supervised release, would serve the goals of sentencing and would protect the public.

    I.   **SENTENCING FRAMEWORK: FACTORS TO BE CONSIDERED IN IMPOSING A "REASONABLE" AND "INDIVIDUALIZED" SENTENCE PURSUANT TO 18 U.S.C. § 3553(A)**

1

In Ms. Filomeno-Gomez's case, a sentence below the advisory Guidelines range would still satisfy the Second Circuit's recognition of the need to avoid unwarranted sentencing disparities while imposing "individualized justice," United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005), abrogated on other grounds, United States v. Fagans, 406 F.3d 138, 142 (2d Cir. 2005), through a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing.

Title 18, United States Code § 3553(a) provides the framework within which a sentencing judge must determine the appropriate sentence for a defendant:

> **Factors to be considered in imposing sentence**. The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>     A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     B. to afford adequate deterrence to criminal conduct;
>
>     C. to protect the public from further crimes of the defendant; and
>
>     D. to provide the defendant with needed education or

> > vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentence available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > A. the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines
> >
> > . . .
>
> (5) any pertinent policy statement—
>
> > A. issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As the Court is well aware, it has been established since 2005 that the mandatory nature of the Guidelines was unconstitutional, and that the Guidelines' binding authority violated a defendant's Sixth Amendment right to trial by jury. See United States v. Booker, 543 U.S. 220 (2005). While a sentencing court is now still required to consider the Guideline range, it also must consider, equally, the other factors enumerated under § 3553(a) when imposing a sentence. This concept was upheld in Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007), where the United States Supreme Court ruled that the District Court is held to no special standard when it departs from the advisory Guidelines, and that such

sentences on appeal, no matter how far above or below the Guidelines range, are only reviewed under the highly deferential abuse-of-discretion standard.

<u>Gall's</u> significant limitation on the reach of Appellate Courts to overturn the sentencing decisions of the district court in particular confirms that district courts are once again free to impose "individualized justice" as articulated by the Second Circuit. <u>United States v. Crosby</u>, <u>supra</u>, at 114. Thus, while a sentencing court must consider the applicable Guidelines range, there is no presumption that a sentence within that range satisfies all the objectives of § 3553(a). In fact, neither § 3553(a) nor the majority opinions in <u>Booker</u> or more recently in <u>Gall</u> and <u>Kimbrough</u> suggest that the sentencing court should give the Guidelines any priority over the other factors listed in § 3553(a).[1] To this end, the Second Circuit has stated that "[i]t is now … emphatically clear that the Guidelines are guidelines - that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008). Indeed, giving the Guidelines any sort of presumptive correctness or weighted consideration would in effect resurrect them to the level of de facto mandatory, which obviously runs afoul of <u>Booker</u>. <u>See</u> <u>United</u>

---

[1] It is noteworthy that the majority in <u>Gall</u> declined to adopt Justice Alito's suggestion, in dissent, that the Guidelines should hold "significant" weight to a judge's sentencing decision as compared to the other factors. <u>See</u> <u>Gall</u>, 552

States v. Dorvee, 604 F.3d 84, 93 (2d Cir. 2010) (citing United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006)) (declining to establish "any presumption, rebuttable or otherwise, that a Guidelines sentence is reasonable").

Guideline § 1B1.1 sets forth a three-step process for the sentencing court to follow in determining a "reasonable" sentence. The first step requires the sentencing court to determine the correct Guideline range for the case. In the second step, the sentencing court must determine whether a departure from the Guideline range is warranted due to the presence of extraordinary circumstances "of a kind" or "to a degree" that were not adequately considered by the Commission. These two steps will produce a sentence that is "under the framework set out in the Guidelines."

The third step requires the sentencing court to consider the factors under 18 U.S.C. § 3553(a) taken as a whole in determining an appropriate sentence. In this third step, the court must determine whether to impose a "variance" sentence, which is a sentence outside of the Guideline range (many courts have called this "a non-Guidelines sentence") by considering the factors set forth in Section 3553(a).

For the reasons articulated below, Ms. Filomeno-Gomez respectfully requests that the Court downwardly depart from the advisory Guideline range

---

U.S. at 5.

or impose a non-Guidelines sentence (i.e., a "variance") of probation, which under these circumstances would fulfill Judge Newman's recognition of imposing "individualized justice," United States v. Crosby, supra, at 114, as well the statutory mandate that "a sentence be sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

## II. THE DEFENDANT'S PERSONAL HISTORY SUPPORTS A VARIANCE

Mental and emotional conditions are not "ordinarily relevant" to sentencing departures, but "in extraordinary circumstances a downward departure may be warranted on the ground that 'extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense.'" United States v. Brady, 417 F.3d, 326, 333 (2d Cir. 2005) (internal citations omitted).

Ms. Filomeno-Gomez fits the description set above. She endured an extremely difficult childhood for numerous reasons set forth in the Pre-Sentence Report (PSR). The incidents described in PSR Para. 54 had significant emotional and mental repercussions, particularly since Ms. Filomeno-Gomez has not adequately addressed them. Further, PSR Para. 53 describes incidents of violence to which Ms. Filomeno-Gomez was a witness. The particular circumstances of these incidents make them particularly emotionally trying for such a young girl.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**The loss has a massive impact on her, and she has continued to carry the memory, as seen in PSR Para. 68. The event sent her into a depression that pushed her to resign from her job and led her family members to notice negative changes. Id., para. 79. She turned inward, turning away from her mother and sister to whom she had been so close.**

**The terrible events referred to above have all contributed to Ms. Filomeno-Gomez's serious issues with mental health and drug addiction, which in turn greatly contributed to this offense. Ms. Filomeno-Gomez has herself described a "mental break down" tied to her past in PSR Para. 60.** ▮

▮▮▮▮▮▮▮▮▮▮

**One further issue caused by** ▮▮▮ **has been Ms. Filomeno-Gomez's attempts to self-medicate through constant activity and, particularly, narcotics. She took a job at strip clubs because it kept her busy**

through the night and put her in a place of constant action. A major part of that action was substance abuse, including alcohol and, eventually, cocaine. She describes the strip club as a place "allow[ing] her to drink, 'run wild', and suppress the thoughts that ran through her mind, particularly when she was home alone." Id. para. 61.

Ms Filomeno-Gomez's drug use at the strip club made her vulnerable to the poor decision she made in the instant offense. People began offering her cocaine, feeding her addiction, and she eventually agreed to accept cocaine packages. This let her make a small amount of money as well as, perhaps more importantly, staying in the good graces of those providing her with the cocaine she needed to satisfy her drug addiction and need to self-medicate.

Ultimately, Ms. Filomeno-Gomez has a significantly tragic personal background. These issues all have a nexus with the instant offense, and contributed to her decision to engage in this conduct. These issues do not excuse her conduct; however, they are sufficient to make her an appropriate candidate for a downward variance.

### III. THE DEFENDANT PRESENTS A LOW RISK OF RECIDIVISM

Based upon the issues listed above, Ms. Filomeno-Gomez represents a relatively low risk of recidivism. With long overdue proper treatment of her mental health and substance abuse issues, she should be successful following incarceration and be able to lead a productive, law-abiding life. She

has shown that ability in the past, as when she had gainful employment or ran her own small business (a daycare). However, her personal issues have derailed those productive periods. Proper focus on treating those issues will place her a tremendous position to succeed.

Additionally, Ms. Filomeno-Gomez's young age is relevant to an analysis of her recidivism risk. At the time of her arrest, she was only 22 years old, and even now is only 23 years old. Other than the proper treatment, simple maturation will help her move past any rash or harmful decisions, and will help her progress to a more stable and productive adulthood.

## IV. CONCLUSION

Ms. Filomeno-Gomez presents a strong case for a variance, and her personal background and numerous reasons to be optimistic for her future support the conclusion that a guidelines sentence in this case would be more severe than necessary to accomplish the goals of sentencing. For these reasons, Ms. Filomeno-Gomez respectfully asks this Court to sentence her to a period of incarceration of one year and one day, followed by supervised release with appropriate conditions.

THE DEFENDANT,<br>
Alba Filomeno-Gomez<br><br>
BY   /s/<br>
TRENT A. LaLIMA<br>
Federal Bar No. ct 29520<br>
LAW OFFICES OF HUBERT J. SANTOS<br>
51 Russ Street

**Hartford, CT 06106**
**Tel. (860) 249-6548**
**Fax (860) 724-5533**

# Certification

I hereby certify that on the above date, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/_____
**TRENT A. LALIMA**